## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>Antitrust Division<br>450 5th Street, N.W., Suite 8700<br>Washington, D.C. 20530,<br><br>        *Plaintiff,*<br>v.<br><br>OLYMPUS GROWTH FUND VI, L.P.<br>One Station Place<br>Stamford, CT 06902,<br><br>LIQUI-BOX, INC.<br>901 E. Byrd Street<br>Richmond, VA 23219,<br><br>    and<br><br>DS SMITH PLC<br>350 Euston Road<br>London, NW1 3AX,<br><br>        *Defendants.* | Civil Action No.:<br><br>Judge: |

## <u>COMPLAINT</u>

The United States of America ("United States"), acting under the direction of the Attorney General of the United States, brings this civil antitrust action against Defendants Olympus Growth Fund VI, L.P. ("Olympus"), Liqui-Box, Inc. ("Liqui-Box"), and DS Smith plc ("DS Smith") to enjoin Olympus's proposed acquisition of DS Smith's Plastics Division ("DS Smith Plastics"), through Liqui-Box, a portfolio company of Olympus. The United States complains and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Pursuant to a Stock Purchase Agreement dated March 5, 2019, Liqui-Box proposes to acquire DS Smith Plastics for approximately $500 million, making the combined company one of the largest bag-in-box ("BiB") suppliers in the United States.

2.    BiBs are engineered plastic bags used to store and dispense liquids such as milk, post-mix (e.g., soda syrups and other beverage concentrates), smoothies, and wine.  BiBs are made up of a single or multi-layer plastic film bag and an attached fitment, which is a plastic component used to facilitate the transfer of the liquids into and out of the bags.  After a BiB is manufactured, it is shipped empty to the customer, who fills the BiB with liquid and then sells the filled BiB.  Customers, such as dairies, soft-drink manufacturers, and other food producers, rely on BiBs to preserve and safely transport their liquids to restaurants, convenience stores, other food service operators, and retail outlets.

3.    In the United States, Liqui-Box and DS Smith are two of only three significant suppliers of BiBs for nearly all end uses, including dairy, post-mix, and smoothies.  Liqui-Box and DS Smith also are two of only four significant suppliers of BiBs for wine in the United States.  The proposed acquisition will eliminate competition between Liqui-Box and DS Smith to supply these BiBs to customers and is likely to lead to increased prices, lower quality and service, and less innovation.

4.    As a result, the proposed acquisition likely would substantially lessen competition for the development, manufacture, and sale of dairy, post-mix, smoothie, and wine BiBs in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II.     THE PARTIES AND THE TRANSACTION

5.      Olympus, a fund managed by private equity firm Olympus Partners, is a Delaware limited partnership with headquarters in Stamford, Connecticut.  In 2018, Olympus Partners had approximately $8.5 billion total capital under management between its different funds, with Olympus comprising approximately $2.3 billion of that total.

6.      Liqui-Box, a company owned by Olympus, is a Delaware corporation with headquarters in Richmond, Virginia.  Liqui-Box is a global manufacturer of packaging and packaging equipment, including BiBs, with four U.S. manufacturing facilities, as well as additional facilities across the world.  In 2018, Liqui-Box had total sales of $177 million, including approximately $123 million in the United States.

7.      DS Smith is a United Kingdom public limited company with headquarters in London, England.  DS Smith is a global manufacturer of packaging, packaging equipment, and recycled paper.  DS Smith operates DS Smith Plastics, a division that manufactures flexible packaging and dispensing solutions, rigid packaging, injection-molded products, and foam products.  Among DS Smith Plastics' flexible packaging products are BiBs, which are primarily sold under the Rapak brand name in the United States.  DS Smith Plastics has its U.S. headquarters in Romeoville, Illinois, and operates five plants in the United States, as well as additional plants across the world.  In 2018, DS Smith Plastics had total sales of $479 million, including approximately $137 million in sales of BiBs and other goods in the United States.

8.      Pursuant to a Stock Purchase Agreement dated March 5, 2019, Liqui-Box agreed to acquire DS Smith Plastics for approximately $500 million.

### III.   JURISDICTION AND VENUE

9.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

10.     Defendants develop, manufacture, and sell BiBs throughout the United States in the flow of interstate commerce.  Defendants' activities in the development, manufacture, and sale of BiBs substantially affect interstate commerce.  This Court has subject-matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

11.     Defendants have consented to venue and personal jurisdiction in this District. Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(c).

### IV.   INDUSTRY BACKGROUND

12.     BiBs are used to store and dispense liquids such as milk, post-mix, smoothies, and wine.  The components of a BiB include a flexible plastic bag and an attached fitment.  BiBs typically hold between one and six gallons of liquid, but they also come in smaller and larger sizes.  The attached fitment facilitates the transfer of liquids into and out of the bag.

13.     The flexible plastic bag component of a BiB is typically made up of one to five layers of film.  The films are most often made of polyethylene ("PE"), but also can be made with ethylene vinyl alcohol ("EVOH") or other materials, and are bound together using heat sealing. Customers require different numbers and types of layers to meet individual product demands. For example, the most basic bags consist of a single layer of PE that secures the liquid during

transport.  More sophisticated bags have additional layers of engineered film that add durability, metallization, and oxygen, moisture, or temperature resistance.

14.     The fitment component of a BiB typically is made from resin using injection molding and attached to the flexible plastic bag component via heat sealing.  The design of the fitment is determined by the liquid that will go into the bag and the method that will be used to dispense the liquid out of the bag.  For example, if the BiB is used to dispense post-mix into a soda dispenser, the fitment will be designed to attach to a soda dispenser.  The simplest fitment is a basic cap, which can be flipped off or unscrewed to pour out the liquid.  Highly engineered fitments can have specialized elements such as a built-in push-tap feature or an oxygen barrier to provide resistance to the elements.  Fitments are often protected by patents due to the specialized nature and high degree of engineering that can be required in fitment manufacturing.

15.     BiBs are shipped to the customer who fills the BiB with liquid using a filler machine that the customer typically purchases or leases from the BiB supplier.  The customer then ships the filled BiB to a store, restaurant, or other food processor.  For example, a post-mix manufacturer seeking to distribute its post-mix to a convenience store would purchase BiBs and a filler machine from a BiB supplier, fill the BiBs with the post-mix at its own facility, and then ship the filled BiBs to the convenience store for use in the convenience store's dispensing machine.

16.     BiBs are distinct from and have numerous advantages over other forms of packaging.  For example, compared to rigid containers (e.g., jugs and bottles) and cartons, which are the other primary forms of packaging used for storing and transporting liquids, BiBs are smaller and thus reduce storage space and shelf space, both when empty and filled.  In addition, BiBs can be a more hygienic form of dispensing liquids because they can reduce user contact and

thus contamination.  Further, BiBs can keep their contents fresher for longer than other types of packaging by allowing for minimal contact with air.  Finally, BiBs can be more economical because they have features that allow the user to get all the liquid out of the bag and result in less packaging waste when they are empty and disposed of.

## V.   RELEVANT MARKETS

### A. Product Markets

#### 1.   Dairy BiBs

17.     BiBs for dairy products hold liquids such as ice cream mix, yogurt, milk, and cream.  Dairy BiBs are typically durable bags made from PE and often have a flip-cap or screw-off cap fitment.  Dairy BiBs are designed to reduce the risk of contamination and extend shelf life.

18.     There are no substitutes for dairy BiBs.  Dairy BiBs provide dairy liquids to customers in an easy to use, inexpensive format that other packaging does not offer.  For example, rigid containers require more storage space, may not keep the dairy liquid as fresh, and may have a higher risk of contamination.  BiBs for other end uses cannot be substituted for dairy BiBs due to the unique specifications for dairy BiBs.

19     In the event of a small but significant non-transitory price increase for dairy BiBs, customers would not substitute away from dairy BiBs in a sufficient volume to make the price increase unprofitable.  Therefore, the development, manufacture, and sale of dairy BiBs is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

### 2. Post-Mix BiBs

20. Post-mix BiBs hold concentrated drink mixes such as soda syrup and juice concentrates. These concentrates are often mixed with carbonated or non-carbonated water before being served. Post-mix BiBs are typically made with layers of PE or EVOH and a fitment that attaches to a drink dispensing machine. Bags used for post-mix must be very strong to accommodate high filling flow rates required by post-mix manufacturers. Post-mix BiBs are designed to maintain freshness and ensure all liquid is dispensed from the bag while minimizing leaks and spills and accurately dispensing the product.

21. There are no substitutes for post-mix BiBs. Post-mix BiBs must attach to a dispensing machine, which a rigid container cannot do. Moreover, BiBs for other end uses cannot be substituted for post-mix BiBs due to the unique fitments and bag design required for post-mix BiBs.

22. In the event of a small but significant non-transitory price increase for post-mix BiBs, customers would not substitute away from post-mix BiBs in a sufficient volume to make the price increase unprofitable. Therefore, the development, manufacture, and sale of post-mix BiBs is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

### 3. Smoothie BiBs

23. Smoothie BiBs hold mixes and other ingredients for smoothies and other drinks. Smoothie BiBs are typically made with layers of PE that offer low oxygen permeability. Like post-mix BiBs, most fitments on smoothie BiBs are designed to be attached to dispensing machines and are highly specialized for the particular types of machines they attach to. A smoothie BiB typically has a special cap into which a probe is inserted in order to dispense the

liquid.  Smoothie BiBs are designed to maintain the safety and freshness of the liquid, protect the

taste and quality of these flavor-sensitive liquids, and reduce the risk of contamination.

24.     There are no substitutes for smoothie BiBs.  Rigid containers cannot be attached

to the dispensing machines smoothie BiBs are used in.  Further, rigid containers are more

expensive and bulkier to transport, may not keep the liquid as fresh, and may have a higher risk

of contamination.  Moreover, BiBs for other end uses cannot be substituted for smoothie BiBs

due to the unique specifications required for smoothie BiBs.  Fitments for smoothie BiBs, for

example, often are designed to specifically interact with the dispensing machines.

25.     In the event of a small but significant non-transitory price increase for smoothie

BiBs, customers would not substitute away from smoothie BiBs in a sufficient volume to make

the price increase unprofitable.  Therefore, the development, manufacture, and sale of smoothie

BiBs is a relevant product market and line of commerce within the meaning of Section 7 of the

Clayton Act, 15 U.S.C. § 18.

### 4.     Wine BiBs

26.     Wine BiBs hold the wine inside of boxed wines, which are often sold in retail

outlets.  The bag component of wine BiBs is typically made from PE and EVOH and is designed

to protect against oxidation and UV light.  The fitment for wine BiBs is typically a push, pull, or

twist tap that is specifically designed to avoid allowing oxygen into the bag when the wine is

dispensed.  This provides a longer shelf life for wine once opened as compared to traditional

bottles.  Because the fitments for wine BiBs are operated directly by individuals, they must be

simple to operate and user friendly.

27.     There are no substitutes for wine BiBs.  BiBs for other end uses cannot be

substituted for wine BiBs due to the unique specifications for wine BiBs.  Both the bag and

fitment are specially engineered to provide an oxygen barrier for the product that other BiBs typically do not provide.  Bags and fitments that lack this specialized oxygen barrier would allow oxygen to seep in and degrade the wine, making it unsuitable for consumption after only a short time.  Wine bottles are not adequate substitutes for wine BiBs.  A wine BiB can keep wine fresh for up to four weeks after it is opened, significantly longer than a wine bottle can.  Also, wine BiBs provide faster and more sanitary pouring for food service operators than bottles do, with no risk of broken glass.

28.     In the event of a small but significant non-transitory price increase for wine BiBs, customers would not substitute away from wine BiBs in a sufficient volume to make the price increase unprofitable.  Therefore, the development, manufacture, and sale of wine BiBs is a relevant product market and line of commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

**B.     Geographic Market**

29.      Customers in the United States do not purchase dairy, post-mix, smoothie, and wine BiBs (collectively, the "Relevant BiB Products") from suppliers located outside the United States.  Shipping these products from outside the United States generally would not be economical because the shipping costs are too large relative to the cost of the BiB itself.  In addition, BiBs manufactured and sold outside the United States often have different specifications than those manufactured and sold in the United States due to, for example, differences in the liquids stored in the BiBs or differences in dispensing machines.  Further, it is important for a supplier of BiBs in the United States to be able to timely provide service to its customers who have issues with the BiBs, such as leakage or breakage of the bags or problems with the attachment of the BiBs to the filler machines.  Suppliers located outside the United

States do not have employees located in the United States to timely service BiB customers in the United States.

30.      In the event of a small but significant non-transitory increase in the price of the Relevant BiB Products, customers in the United States would not procure these products from suppliers located outside the United States in a sufficient volume to make such a price increase unprofitable.  Accordingly, the United States is a relevant geographic market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## VI.    ANTICOMPETITIVE EFFECTS

31.      Liqui-Box, DS Smith, and one other company are the only significant suppliers of dairy, post-mix, and smoothie BiBs to customers located in the United States.  Liqui-Box and DS Smith are two of only four suppliers of wine BiBs to customers located in the United States.

32.      Liqui-Box and DS Smith compete vigorously with one another on the basis of price, quality, and service in the markets for the Relevant BiB Products in the United States. Competition between Liqui-Box and DS Smith has fostered innovation and led to the development of new types of BiBs and product features.  The proposed acquisition would eliminate the substantial head-to-head competition between Liqui-Box and DS Smith and the benefits that customers have realized from that competition in the form of lower prices, better quality and service, and innovation.  By eliminating DS Smith as a competitor in the development, manufacture, and sale of the Relevant BiB Products in the United States, the proposed acquisition of DS Smith Plastics would substantially increase the likelihood that Liqui-

Box would increase prices, reduce quality and service, and diminish investment in research and development below what it would have been absent the acquisition.

33.     The proposed acquisition, therefore, would likely substantially lessen competition in the development, manufacture, and sale of the Relevant BiB Products in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

**VII.   ENTRY**

34.     Entry into the development, manufacture, and sale of the Relevant BiB Products would not be timely, likely, or sufficient to prevent the harm to competition caused by Liqui-Box's proposed acquisition of DS Smith Plastics.

35.     Entry into the markets for the Relevant BiB Products is costly and time consuming.  Significant upfront capital expenditures are required to enter.  The machinery to manufacture BiBs, including injection molding machines for the fitments and production lines that seal the bags and attach the fitments, is expensive and highly engineered.  Manufacturing BiBs in accordance with customer requirements requires skilled employees and industry know-how that can take years to establish.  Further, customers demand that suppliers have a proven ability to supply BiBs with the required specifications so that their BiBs do not leak or break and are able to store the liquids for the required amount of time without spoiling.  This reputation for having a quality product takes significant time to build.  Finally, a new entrant would need to hire trained technicians capable of providing timely service to customers when BiBs leak, break, or encounter other product quality issues.

## VIII.   VIOLATIONS ALLEGED

36.     The acquisition of DS Smith Plastics by Liqui-Box is likely to substantially lessen competition in each of the relevant markets set forth above in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

37.     The transaction will likely have the following anticompetitive effects, among others, in the relevant markets:

      a.   competition between Liqui-Box and DS Smith will be eliminated;

      b.   competition generally will be substantially lessened; and

      c.   prices will likely increase, quality and the level of service will likely decrease, and innovation will likely decline.

## IX.   REQUEST FOR RELIEF

38.     The United States requests that this Court:

      a.   adjudge and decree Liqui-Box's acquisition of DS Smith Plastics to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

      b.   enjoin Defendants and all persons acting on their behalf from consummating the proposed acquisition of DS Smith Plastics by Liqui-Box or from entering into or carrying out any other agreement, plan, or understanding the effect of which would be to combine Liqui-Box with DS Smith Plastics;

      c.   award the United States its costs of this action; and

      d.   grant the United States such other relief as the Court deems just and proper.

Dated: February 19, 2020

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

_____
MAKAN DELRAHIM (D.C. Bar #457795)
Assistant Attorney General


_____
BERNARD A. NIGRO, JR. (D.C. Bar #412357)
Principal Deputy Assistant Attorney General


_____
KATHLEEN S. O'NEILL
Senior Director of Investigations & Litigation


_____
KATRINA H. ROUSE (D.C. Bar #1013035)
Chief
Defense, Industrials, and Aerospace Section


_____
DAVID E. ALTSCHULER (D.C. Bar #983023)
Assistant Chief
Defense, Industrials, and Aerospace Section


_____
JAY D. OWEN
Assistant Chief
Defense, Industrials, and Aerospace Section


_____
CHRISTINE A. HILL* (D.C. Bar #461048)
REBECCA VALENTINE (D.C. Bar #989607)
DANIEL J. MONAHAN, JR.

Attorneys for the United States

Defense, Industrials, and Aerospace Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 8700
Washington, D.C. 20530
Telephone: (202) 305-2738
Facsimile: (202) 514-9033
Email: christine.hill@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED

13

# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I. (a) PLAINTIFFS**

United States of America
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8700
Washington DC 20530

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **11001**
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

Olympus Growth Fund VI, L.P.   Liqui-Box, Inc.   DS Smith plc
One Station Place   901 E. Byrd St.   350 Euston Road
Stamford, CT 06902   Richmond, VA 23219   London, NW1 3AX

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **88888**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Christine A. Hill
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8700
Washington, D.C. 20530
(202) 305-2738

ATTORNEYS (IF KNOWN)

Katherine Rocco, Counsel         Joseph Matelis
for Olympus & Liqui-Box          Counsel for DS Smith plc
Kirkland & Ellis LLP             Sullivan & Cromwell LLP
601 Lexington Avenue             1700 New York Ave., NW, Ste. 700
New York, NY 10022               Washington, D.C. 20006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

(●) 1 U.S. Government Plaintiff

( ) 2 U.S. Government Defendant

( ) 3 Federal Question (U.S. Government Not a Party)

( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in Another State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

( ● ) **A.  Antitrust**

[X] 410  Antitrust

( ) **B.  Personal Injury/ Malpractice**

[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Federal Employers Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[ ] 360 Other Personal Injury
[ ] 362 Medical Malpractice
[ ] 365 Product Liability
[ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
[ ] 368 Asbestos Product Liability

( ) **C.  Administrative Agency Review**

[ ] 151 Medicare Act

**Social Security**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))

**Other Statutes**
[ ] 891 Agricultural Acts
[ ] 893 Environmental Matters
[ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

( ) **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

( ) **E.  General Civil (Other)**          OR          ( ) **F.  Pro Se General Civil**

**Real Property**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent, Lease & Ejectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**Personal Property**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability

**Bankruptcy**
[ ] 422 Appeal 27 USC 158
[ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
[ ] 535 Death Penalty
[ ] 540 Mandamus & Other
[ ] 550 Civil Rights
[ ] 555 Prison Conditions
[ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 835 Patent – Abbreviated New Drug Application
[ ] 840 Trademark

**Federal Tax Suits**
[ ] 870 Taxes (US plaintiff or defendant)
[ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
[ ] 625 Drug Related Seizure of Property 21 USC 881
[ ] 690 Other

**Other Statutes**
[ ] 375 False Claims Act
[ ] 376 Qui Tam (31 USC 3729(a))
[ ] 400 State  Reapportionment
[ ] 430 Banks & Banking
[ ] 450 Commerce/ICC Rates/etc.
[ ] 460 Deportation

[ ] 462 Naturalization Application
[ ] 465 Other Immigration Actions
[ ] 470 Racketeer Influenced & Corrupt Organization
[ ] 480 Consumer Credit
[ ] 490 Cable/Satellite TV
[ ] 850 Securities/Commodities/ Exchange
[ ] 896 Arbitration
[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
[ ] 950 Constitutionality of State Statutes
[ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G.  *Habeas Corpus/ 2255* | ○ H.  *Employment Discrimination* | ○ I.  *FOIA/Privacy Act* | ○ J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K.  *Labor/ERISA (non-employment)* | ○ L.  *Other Civil Rights (non-employment)* | ○ M.  *Contract* | ○ N.  *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 7 of the Clayton Act, 15 U.S.C. § 18 - merger that substantially lessens competition

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** JURY DEMAND: | Check YES only if demanded in complaint YES ☐   NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |

DATE:   2/19/20     SIGNATURE OF ATTORNEY OF RECORD  *Christina Hill*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.