## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     Plaintiff,

        v.

OLYMPUS GROWTH FUND VI, L.P.,

LIQUI-BOX, INC.,

and

DS SMITH PLC,

     Defendants.

Civil Action No.: 1:20-cv-00464

Hon. Christopher R. Cooper

## FINAL JUDGMENT

    WHEREAS, Plaintiff, United States of America, filed its Complaint on February 19, 2020, the United States and Defendants, Liqui-Box, Inc., Olympus Growth Fund VI, L.P., and DS Smith plc, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

    AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

    AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

    AND WHEREAS, Defendants agree to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestiture required below can and will be made and that Defendants will not later raise any claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.   JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.   DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" means TriMas or another entity to whom Defendants divest the Divestiture Assets.

B.      "Liqui-Box" means Defendant Liqui-Box, Inc., a Delaware corporation with its headquarters in Richmond, Virginia; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Olympus Growth" means Defendant Olympus Growth Fund VI, L.P., a Delaware limited partnership with its headquarters in Stamford, Connecticut; its successors and

assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "DS Smith" means Defendant DS Smith plc, a United Kingdom corporation with the U.S. headquarters of its Plastics Division in Romeoville, Illinois; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.      "TriMas" means TriMas Corporation, a Delaware corporation with its headquarters in Bloomfield Hills, Michigan; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "BiB Products" means all components of Bag-in-Box ("BiB") packaging and solutions, including, but not limited to, bags and fitments, whether the bags or fitments are sold as part of a complete BiB solution or individually.   The term "BiB Products" does not include components used solely for tea or coffee.

G.      "Rapak Business" means the development, manufacture, and sale of BiB Products and filler machines for BiB Products by the Plastics Division of DS Smith in the United States.

H.      "Divestiture Assets" means the Rapak Business, including:

1.      All of Defendants' rights, title, and interests in the facilities located at the following addresses (the "Divestiture Facilities"):

a.      7430 New Augusta Road, Indianapolis, Indiana 46268

("Indianapolis Plant");

3

b. 6907 Coffman Road, Indianapolis, Indiana 46268 ("Indianapolis Warehouse");

c. 29959 Ahern Avenue, Union City, California 94587 ("Union City Plant"); and

d. 1020 Davey Road, Woodbridge, Illinois 60517;

2. The DS Smith production lines listed in Appendix A (the "Divested Lines");

3. The DS Smith injection molding machines listed in Appendix B and all molds and dies, fitment assembly machines, and machinery used to manufacture fitments for the Rapak Business (the "Divested Fitment Equipment");

4. At the option of Acquirer, all other tangible assets related to or used in connection with the Rapak Business, including but not limited to: all manufacturing equipment, quality assurance equipment, research and development equipment, machine assembly equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records;

5. All intangible assets related to or used in connection with the Rapak Business, including but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names (including the Rapak

4

name and all trademarks, service marks, and service names associated with the Rapak brand); technical information; computer software and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information DS Smith provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments; and

      6.    At the option of Acquirer, inventory of BiB Products up to the amount sold by the Rapak Business in any two (2) months in 2019, with the specific months to be determined by Acquirer.

    I.    "Relevant Employees" means all employees engaged in the Rapak Business.

### III.   APPLICABILITY

    A.    This Final Judgment applies to Liqui-Box, Olympus Growth, and DS Smith, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

    B.    If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendants must require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer of the assets divested pursuant to this Final Judgment.

## IV.   DIVESTITURES

A.      Defendants are ordered and directed, within forty-five (45) calendar days after the Court's entry of the Asset Preservation Stipulation and Order in this matter, to divest the Divestiture Assets in a manner consistent with this Final Judgment to TriMas or an alternative Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total and will notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      Prior to the divestiture of the Divestiture Assets pursuant to Paragraph IV(A), Defendants must relocate any Divested Lines located at DS Smith's facility located at 1201 Windham Parkway, Romeoville, Illinois 60446 ("Romeoville Plant") to one or more of the Divestiture Facilities, as determined by Acquirer, and must ensure that all Divested Lines are fully operational at the time of the divestiture.

C.      In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than TriMas, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process, except information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make available such

information to the United States at the same time that such information is made available to any other person.

D.     Defendants must provide Acquirer and the United States with reasonable access to Relevant Employees and with organization charts and all information relating to Relevant Employees, including name, job title, past experience relating to the Divestiture Assets, responsibilities, training and educational history, relevant certifications, and to the extent permissible by law, job performance evaluations, and current salary and benefits information, to enable Acquirer to make offers of employment. Upon request, Defendants must promptly make Relevant Employees available for interviews with Acquirer during normal business hours at a mutually agreeable location and will not interfere with efforts by Acquirer to employ Relevant Employees, such as by offering to increase the salary or benefits of Relevant Employees other than as part of a company-wide increase in salary or benefits granted in the ordinary course of business. Defendants' obligations under this paragraph will expire ninety (90) calendar days after the divestiture of the Divestiture Assets under Paragraph IV(A).

E.     For any Relevant Employees who elect employment with Acquirer in the period provided for by Paragraph IV(D), Defendants must waive all noncompete and nondisclosure agreements, vest all unvested pension and other equity rights, and provide all other benefits that the Relevant Employees would generally be provided if transferred to a buyer of an ongoing business. For a period of twelve (12) months from the filing of the Complaint in this matter, Defendants may not solicit to hire, or hire, any Relevant Employee who was hired by Acquirer, unless: (1) the individual is terminated or laid off by Acquirer; or (2) Acquirer agrees in writing that Defendants may solicit or hire that individual. Nothing in Paragraphs IV(D) and (E)

prohibits Defendants from maintaining any reasonable restrictions on the disclosure by any Relevant Employee who accepts an offer of employment with Acquirer of the Defendant's proprietary non-public information that is: (1) not otherwise required to be disclosed by this Final Judgment; (2) related solely to Defendants' businesses and clients; and (3) unrelated to the Divestiture Assets.

F.      Defendants must permit prospective Acquirers of the Divestiture Assets to have reasonable access to make inspections of the physical facilities of the Divestiture Assets, the Divested Lines, and the Divested Fitment Equipment, wherever located; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

G.      Defendants must warrant to Acquirer that each asset will be fully operational on the date of sale.

H.      Defendants will not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

I.      Defendants must make best efforts to assign, subcontract, or otherwise transfer all contracts related to the Divestiture Assets, including all supply and sales contracts, to Acquirer. Defendants must not interfere with any negotiations between Acquirer and a contracting party.

J.      Within three hundred (300) calendar days after the Court's entry of the Asset Preservation Stipulation and Order in this matter, Defendants must ensure that the Divested Fitment Equipment is relocated to, and fully operational at, one or more locations as specified by Acquirer.

8

K.      At the option of Acquirer, Defendants must enter into a supply agreement for the manufacture of fitments for the Rapak Business sufficient to meet Acquirer's needs, as determined by Acquirer, for a period of up to six (6) months.  Upon Acquirer's request, the United States, in its sole discretion, may approve one or more extensions of this supply agreement, for a total of up to an additional six (6) months.  If Acquirer seeks an extension of the term of this supply agreement, Defendants must notify the United States in writing at least one (1) month prior to the date the supply agreement expires.  The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions for the Rapak Business.

L.      At the option of Acquirer, Defendants must enter into a transition services agreement for service and support relating to the Rapak Business for a period of up to twelve (12) months.  The United States, in its sole discretion, may approve one or more extensions of this transition services agreement, for a total of up to an additional six (6) months.  If Acquirer seeks an extension of the term of this transition services agreement, Defendants must notify the United States in writing at least one (1) month prior to the date the agreement expires.  The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions for the services provided.  The employee(s) of Defendants tasked with providing these transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants.

M.      Defendants must warrant to Acquirer:  (1) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets; and (2) that following the sale of the Divestiture Assets, Defendants will not undertake, directly or

indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

N.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV or by a Divestiture Trustee appointed pursuant to Section V of this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business in the development, manufacture, and sale of BiB Products for dairy, post-mix, smoothie, and wine. It must be demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and that the divestiture of such assets will remedy the competitive harm alleged in the Complaint. If any of the terms of an agreement between Defendants and Acquirer to effectuate the divestitures required by the Final Judgment varies from the terms of this Final Judgment then, to the extent that Defendants cannot fully comply with both terms, this Final Judgment will determine Defendants' obligations. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

(1)      must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business in the development, manufacture, and sale of BiB Products for dairy, post-mix, smoothie, and wine; and

(2)      must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively.

## V.    <u>APPOINTMENT OF DIVESTITURE TRUSTEE</u>

A.     If Defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), Defendants must notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.     After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee will have the right to sell the Divestiture Assets. The Divestiture Trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have such other powers as the Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, who will be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such agents or consultants will serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.     Defendants will not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.      The Divestiture Trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee will account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for any of its services yet unpaid and those of agents and consultants retained by the Divestiture Trustee, all remaining money will be paid to Defendants and the trust will then be terminated. The compensation of the Divestiture Trustee and agents and consultants retained by the Divestiture Trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished, but the timeliness of the divestiture is paramount. If the Divestiture Trustee and Defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee will, within three (3) business days of hiring any other agents or consultants, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

E.      Defendants must use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants must provide or develop

12

financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants will take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.       After its appointment, the Divestiture Trustee will file monthly reports with the United States setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. Such reports will include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and will describe in detail each contact with any such person. The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.       If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the Divestiture Trustee will promptly file with the Court a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports will not be filed in the public docket of the Court. The Divestiture Trustee will at the same time furnish such report to the United States, which will have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it deems appropriate to carry out the purpose of the Final Judgment, which may, if

13

necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, the United States may recommend the Court appoint a substitute Divestiture Trustee.

## VI.   NOTICE OF PROPOSED DIVESTITURE

A.      Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States of any proposed divestiture required by Section IV or Section V of this Final Judgment. If the Divestiture Trustee is responsible, it will similarly notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee must furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested

from Defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States will provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not, in its sole discretion, it objects to Acquirer or any other aspect of the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V must not be consummated.  Upon objection by Defendants under Paragraph V(C), a divestiture proposed under Section V must not be consummated unless approved by the Court.

## VII.    FINANCING

Defendants must not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII.    ASSET PRESERVATION

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by the Court.  Defendants will take no action that would jeopardize the divestiture ordered by the Court.

## IX.    AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V, Defendants must deliver to the United States an affidavit, signed by each

Defendant's Chief Financial Officer and highest-ranking officer or partner, which must describe the fact and manner of Defendants' compliance with Section IV or Section V of this Final Judgment. Each such affidavit must include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and must describe in detail each contact with any such person during that period. Each such affidavit must also include a description of the efforts Defendants have taken to complete the sale of or solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, must be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants must deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants must deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this Section within fifteen (15) calendar days after the change is implemented.

C.      Defendants must keep all records of all efforts made to preserve and divest the Divestiture Assets until one (1) year after such divestiture has been completed.

## X.   COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Asset Preservation Stipulation and Order or of determining whether the Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents retained by the United States, must, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division and on reasonable notice to Defendants, be permitted:

   (1)    access during Defendants' office hours to inspect and copy or, at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

   (2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in Section X will be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time that Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States will give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.      NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII.      RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.      ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may

18

establish a violation of this Final Judgment and the appropriateness of any remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four (4) years following the expiration of the Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court

order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action under this Section; (2) any appropriate contempt remedies; (3) any additional relief needed to ensure Defendant complies with the terms of the Final Judgment; and (4) fees or expenses as called for in Paragraph XIII(C).

## XIV.   EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures have been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XV.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, any comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.


Date: <u>June 22, 2021</u>


_____

United States District Judge

**APPENDIX A**

1.      Production Line R01 (located at the Romeoville Plant);

2.      Production Line R02 (located at the Romeoville Plant);

3.      Production Line R12 (located at the Romeoville Plant);

4.      Production Line UC01 (located at the Union City Plant);

5.      Production Line UC03 (located at the Union City Plant);

6.      Production Line N03 (located at the Indianapolis Plant); and

7.      Production Line N04 (located at the Indianapolis Plant).

**APPENDIX B**

1.  Injection Molding Machine ("IM") 96 (located at the Worldwide Dispensers location at 78 2nd Avenue S, Lester Prairie, Minnesota 55354 ("Lester Prairie Plant"));

2.  IM 542 (located at the Lester Prairie Plant);

3.  IM 747 (located at the Lester Prairie Plant);

4.  IM 599 (located at the Lester Prairie Plant);

5.  IM 345 (located at the Lester Prairie Plant);

6.  IM 515 (located at the Lester Prairie Plant);

7.  IM 583 (located at the Worldwide Dispensers location at 595 Territorial Drive, Bolingbrook, Illinois 60440 ("Bolingbrook Plant");

8.  IM 373 (located at the Bolingbrook Plant);

9.  IM 294 (located at the Bolingbrook Plant); and

10. IM 80 (located at the Bolingbrook Plant).